IN RE INTEREST OF A.M.Y., F.E.Y., AND K.C.Y., CHILDREN
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. W.H., APPELLANT.
466 N.W.2d 93

Filed March 1, 1991.    No. 90-479.

Martin J. Kushner, of Kushner Law Office, for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

Karen L. Vervaecke, Assistant Douglas County Public Defender, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is an appeal in a termination of parental rights case. The appellant's parental rights to his three children were terminated by an order of the separate juvenile court on May 9, 1990. He has appealed from the judgment and has assigned as error the trial court's termination of his parental rights and certain evidentiary rulings by the trial court.

Our review is de novo on the record, and we are required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, we will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of A.B. et al.*, 236 Neb. 220, 460 N.W.2d 114 (1990).

The mother relinquished her parental rights on June 2, 1989, and her rights are not involved in this appeal.

On January 11, 1986, the children were removed from the mother's home and placed in the temporary custody of the State after being found home alone at 4 a.m. Following an adjudication hearing on March 26, 1986, the children were

found to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988), being under 18 years of age and lacking proper parental care by reason of the fault or habits of their mother.

On April 14, 1986, the appellant filed a motion of intervention alleging that he was the natural, biological father of each of the children and that he wanted custody and physical possession of his children. On April 24, 1986, the trial court sustained the appellant's motion to intervene as to A.M.Y. and F.E.Y., and took under advisement the motion as to K.C.Y.

On May 28, 1986, the trial court found that the children were as described under § 43-247(3)(a) insofar as the appellant was concerned, after he admitted to the supplemental petition filed May 20, 1986. Specifically, the appellant admitted that the mother allowed him to visit in her home despite a court restraining order, that the mother had left the children in the appellant's custody on numerous occasions, and that on January 11, 1986, the mother left her home because the appellant was present and had been drinking. It was on January 11 that the children were found alone in their mother's home at 4 a.m.

Various plans for reunification were ordered between July 29, 1986, and June 2, 1989. The first plan ordered the appellant to:

> a. Participate in parenting and counseling and follow all recommendations; the Child Protective Service Worker will make the appropriate arrangements;
>
> b. Submit to a chemical dependency evaluation and follow all recommendations as a result of the evaluation; the probation officer will make the referral;
>
> c. Have reasonable rights of visitation as arranged by the Nebraska Department of Social Services; and
>
> d. Cooperate with the workers involved and notify them within 72 hours of any change in address or employment.

This order remained in effect until March 11, 1987, when two more recommendations were added. In addition to the provisions of the previous orders, the appellant was ordered to "[p]articipate in out-patient alcohol counseling and follow the

recommendations of the counselor; [and] [n]ot go to [the mother's] home if he is or has been drinking."

Further orders remained substantially the same until December 1, 1987, when the appellant was ordered only to "[n]ot have any contact with [the mother] or any of her family except for his weekly visitation with the children herein; [and] [c]omplete his alcohol rehabilitation program and attend at least 3 AA meetings a week and provide the Court with written verification of attendance."

The previous orders' provisions were dropped because it was believed that the parents, up to the December 1, 1987, hearing, had not been able to comply with anything the court had ordered, primarily because of the drinking problems and violence associated with them. In order for the parents to be able to properly parent their children, the court concluded that the first step was their giving up the alcohol.

Subsequent orders remained the same until November 4, 1988, when the appellant was ordered, in addition to having no contact with the children's mother, to have suitable housing for himself and his children, to attend one AA meeting a week and provide verification of attendance to the probation office, and to call the probation officer every month. On June 2, 1989, the appellant was also ordered to consistently visit the children.

On August 10, 1989, the motion to terminate the appellant's parental rights was filed. It alleged that reasonable efforts, under the direction of the court, had failed to correct the conditions leading to the determination that the children were within the meaning of § 43-247(3)(a) in that (1) the appellant had failed to participate in parenting classes; (2) the appellant had failed to refrain from contact with the children's mother; (3) the appellant had failed to cooperate with the workers involved in the case, often not notifying them of his whereabouts or changes in his status; (4) the appellant had failed to refrain from consuming alcoholic beverages; and (5) the appellant had failed to obtain housing suitable for himself and the children.

The termination hearing was held on December 4, 1989, January 11, 1990, and April 25, 1990. On May 8, 1990, the trial court found all of the allegations contained in the motion were

true, that the children were within the meaning of Neb. Rev. Stat. § 43-292(6) (Reissue 1988) because reasonable efforts under the court's direction had failed to correct the conditions leading to the determination that the children were as described in § 43-247(3)(a), and that the best interests of the children would be served by terminating the appellant's rights.

The appellant contends the court deprived him of a fair evidentiary hearing by making conflicting rulings in favor of the State in two specific areas.

First, the appellant complains of the court's allowing the State's witness Harry DiLise to testify over objection about the actions of his predecessor with the Department of Social Services (DSS). The court allowed this testimony under the business records exception to the hearsay rule.

The appellant offered the testimony of Forrest Roper, a probation officer. Roper testified to events occurring while he was involved in this case from October 1987 to September 1988. Kara Murphy, the probation officer who received the case from Roper in September 1988, also testified on behalf of the appellant. The appellant attempted to have Murphy testify to events which occurred during the period when Roper presided over the case and to which Roper had already testified. It was on this basis that the State objected, and it was on this basis that the objection was sustained.

This situation can be distinguished from that involving the testimony of DiLise on behalf of the State. No other personnel from DSS testified.

The appellant's other examples of rulings he claims to be contradictory in terms of the scope of issues can also be distinguished. The State posed questions to its witnesses regarding the best interests of the children. The appellant's objections to these questions on the basis of relevance were overruled.

The appellant questioned DiLise as to whether the appellant ever lied to him or used profanity toward him. The court cut short the questioning on the basis that it was immaterial and outside the scope of the motion.

The unequivocal language of § 43-292 imposes two requirements before parental rights may be terminated.

First, requisite evidence must establish existence of one or more of the circumstances described in subsections (1) to (6) of § 43-292. Second, if a circumstance designated in subsections (1) to (6) is evidentially established, there must be the additional showing that termination of parental rights is in the best interests of the child, the primary consideration in any question concerning termination of parental rights.

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 267, 417 N.W.2d 147, 158 (1987).

Questions as to whether the appellant had ever lied to the court or used profanity toward the worker are irrelevant regarding the combined issues of § 43-292(6) and the best interests of the children and were correctly eliminated.

After reviewing this record, it is clear that the appellant, after 3½ years, made little or no progress toward correcting the conditions which led to the initial juvenile court determination that the children were within the meaning of § 43-247(3)(a).

The major concerns dominating the adjudication of this case from the outset were the alcoholism of the parents and the abusive relationship between them resulting from the alcoholism. Until these matters could be resolved, the appellant was unable to even begin work on other issues involved in directly parenting his children.

Two probation officers testified for the appellant and stated that they believed he had complied substantially with the court's orders; however, the probation reports from 1987 through 1990 show that the appellant was in violation of the court's orders. Although the appellant did follow some portions of the court's orders, such as completing a chemical dependency treatment (almost 2 years after it was ordered), the evidence shows that he had not corrected the conditions which originally brought these children to the attention of the court.

The appellant was ordered to participate in parenting classes, but he never enrolled or participated in parenting classes. The trial court later dropped this requirement with the hope that if the appellant were only required to successfully comply with the conditions of refraining from any form of contact with the children's mother and abstaining from alcohol, he would later

be ready to deal with issues more directly involving the parenting of his children.

The evidence shows that the appellant had assaulted the children's mother on more than one occasion following the inception of this case. The appellant was found to be in contempt for violating the court's order regarding no contact with the mother; however, he continued to have phone contact with her.

The appellant was ordered to refrain from consuming alcoholic beverages, to attend AA meetings, at first three times a week and then later once a week, and to provide verification of his AA attendance. While the appellant denied abusing alcohol, he did not deny using alcohol. The appellant's probation officers also testified that he did not provide verification of AA attendance except at review hearings, and then he never had verification for all required meetings.

The appellant was ordered to find housing suitable for himself and the children, but has lived with friends or in efficiency or one-bedroom apartments. He has no suitable housing. He was also ordered to cooperate with the workers involved in the case; however, one of the workers testified there were several periods of a month or more when he had no knowledge of the appellant's whereabouts.

This same worker testified that the children have special needs because of severe behavioral problems. He gave the appellant the names of the children's schools and their therapists so that the appellant could become more familiar with their needs. The appellant did not believe his children had any problems and did not contact the teachers or therapists. The appellant testified he was "not familiar with the type of behavior [his children] have."

The children have been in the custody of DSS since January 11, 1986, and in continuous foster care since February 17, 1987. The appellant has made no substantial progress toward reunification. He has not corrected the conditions leading to the adjudication of this matter. The fact of participation in certain elements of the court-ordered plan of reunification does not necessarily prevent the court from entering an order of termination where the parent has not made satisfactory

progress toward reunification. See, *In re Interest of V.M.*, 235 Neb. 724, 457 N.W.2d 288 (1990); *In re Interest of C.G.C.S.*, 225 Neb. 605, 407 N.W.2d 196 (1987).

All three children in this case have behavior problems and need stability and permanency now. Indefinite foster care is not acceptable where the evidence suggests the need for a secure and permanent home. *In re Interest of D.C.*, 229 Neb. 359, 426 N.W.2d 541 (1988). "A juvenile's best interests are the primary considerations in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code." *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 267, 417 N.W.2d 147, 158 (1987). It is in the children's best interests that the appellant's parental rights be terminated.

The judgment is affirmed.

AFFIRMED.