IN RE INTEREST OF B.M., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. L.M., APPELLANT.

475 N.W.2d 909

Filed October 18, 1991.    No. 91-009.

Jeffrey M. Wirth, guardian ad litem, and Stephen G. Lowe for appellant.

Donald J.B. Miller, Deputy Buffalo County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The mother of a daughter born February 27, 1979, appeals from the order of the county court terminating her parental rights. The father, whose parental rights were terminated by the same order, has not appealed.

> Our review is de novo on the record, and we are required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, we will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

*In re Interest of A.M. Y., F.E. Y., and K.C. Y.*, 237 Neb. 414, 415, 466 N.W.2d 93, 94 (1991).

The record shows that in early April 1987, the appellant and her husband voluntarily placed their daughter in foster care, after reporting to the Department of Social Services (DSS) that she was uncontrollable. The child was found to have bruises on her arm and back. After she reported that her father beat her, a petition was filed on April 8, 1987, alleging that the child was a minor as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988).

Following a court-ordered psychological evaluation of the child, it was found that she was suffering from severe disturbances in her social-emotional adjustment. The nomadic lifestyle of her parents and the trauma associated with the home environment were the primary causes of the child's problems.

On July 29, 1987, the court found that the child was a child as described in § 43-247(3)(a).

In August 1987, the appellant and her husband left Nebraska and moved to Wyoming with their other two children. While the child's parents were in Wyoming, the only contact they made with her was by telephone, and these conversations disturbed her because of the threats made by her father and the obscene language he used.

In November 1987, the appellant and her husband were reported for child abuse. Due to the child abuse allegations, they began therapy in Pinedale, Wyoming, in December 1987. Dr. Gerald Edmonds completed psychological evaluations on both parents and concluded that they were incapable of performing adequately as parents.

Sometime during the summer of 1988, the appellant and her husband returned to Nebraska. At a review hearing on July 13, 1988, the court ordered that the parents were to obtain counseling and attend parenting classes and that telephone visits with the child were to be monitored so that the parents would not make any threats or use obscene language. Personal visitations were to be strictly supervised by DSS.

In October 1988, the appellant and her husband separated. The appellant remained in Nebraska, and her husband moved to Wyoming with their other two children. These two children

were later placed in foster care in Wyoming, and the father relinquished his parental rights to them.

On January 23, 1989, the child was admitted to Richard Young Hospital in Kearney, Nebraska, for psychiatric treatment. During the course of her hospitalization, she and the appellant were provided with a wide variety of professional services directed at improving their relationship and the child's mental health.

At a review hearing on March 8, 1989, the county court for Morrill County, Nebraska, adopted a reunification plan which had been prepared by DSS.

The appellant and anyone in her home in a potential parental role were ordered to cooperate 100 percent with the therapeutic services designated by DSS, including family sessions at Richard Young Hospital, psychological evaluations, family nights at Richard Young, and any outpatient services thereafter. The appellant and anyone in her home having a potential parental role were ordered to participate 100 percent in a parenting class and cooperate 100 percent in any additional services recommended by DSS. At that time the appellant was living with Neal Anastos.

The appellant was also ordered to participate in visitation with the child as designated by DSS, to demonstrate the ability to provide appropriate housing and support for the child, and to extinguish behavior which could result in the filing of criminal charges. The appellant had recently been convicted on bad-check charges.

On October 30, 1989, a petition to terminate parental rights was filed in Morrill County. Prior to any trial on the merits of that petition, the case was transferred to Buffalo County, Nebraska.

On January 30, 1990, the county court for Buffalo County found that the State must either proceed in Morrill County on its petition for termination of parental rights or dismiss that petition and file an appropriate petition in the Buffalo County Court. Accordingly, the petition to terminate parental rights filed in the county court for Morrill County was dismissed without prejudice on February 21, 1990.

On June 8, 1990, a petition to terminate parental rights was

filed in the county court for Buffalo County. A guardian ad litem was appointed for the appellant, and the matter was tried on November 8 and 9, 1990.

Following that hearing, the father's parental rights were terminated, and the appellant's parental rights were terminated because she had substantially and continuously or repeatedly neglected the child and had refused to give her necessary parental care and protection; because the appellant was unable to discharge parental responsibilities because of mental illness or deficiency, and such condition would continue for a prolonged indeterminate period; and because the appellant had failed to correct the conditions leading to the determination that the child was a person as defined by § 43-247(3)(a).

The appellant has assigned as error the trial court's findings regarding the grounds for termination of her parental rights, the insufficiency of the evidence to show that termination of the appellant's parental rights was in the best interests of the child, and the admission of exhibits and testimony concerning psychological opinions because they were not based on reasonable psychological or psychiatric certainty.

The appellant argues that the trial court erred in finding that she is unable to discharge parental responsibilities due to mental illness or mental deficiency and that her condition will continue for a prolonged indeterminate period of time. The appellant contends that borderline personality disorder is not a mental illness under Neb. Rev. Stat. § 43-292(5) (Reissue 1988), because Dr. Brad Bigelow testified that borderline personality disorder would not be classified as a mental deficiency or mental illness.

In *In re Interest of Fant*, 214 Neb. 692, 335 N.W.2d 314 (1983), the appellant was afflicted with borderline personality disorder, which we characterized as a mental illness or deficiency under the statute.

While Dr. Bigelow testified that borderline personality disorder does not fit his definition of mental illness or mental deficiency, Dr. Jack Matteson, an expert in psychiatry who testified for the State, characterized borderline personality disorder as a mental disorder which is not easily treated. Although Drs. Bigelow and Matteson disagreed on the

classification of borderline personality disorder, both experts agreed that a person suffering from borderline personality disorder is significantly impaired with regard to the ability to function in social situations, including the ability to be a parent.

In his report of January 5, 1988, Dr. Edmonds found that the appellant's thinking is "somewhat confused and bizarre" and concluded that she is incapable of performing adequately as a parent. Dr. Kimberly Harkins-Schuelke, in her February 17, 1989, evaluation, found that the appellant "appears to have a long-standing mixed personality disorder which has significantly interfered with her ability to lead a productive life or parent her children in a responsible, stable manner" and concluded that the appellant suffers from a personality disorder with antisocial, passive-aggressive, and paranoid features.

Dr. Bigelow, in both his first psychological evaluation, of May 15, 1989, and his second psychological evaluation, of August 20, 1990, concluded that the appellant was suffering from a borderline personality disorder with passive-aggressive trends. At trial, Dr. Bigelow testified that the appellant possessed or demonstrated the following characteristics or criteria for the borderline personality disorder diagnosis:

1. A pattern of unstable and intense interpersonal relationships characterized by alternating between extremes of overidealization and devaluation.

2. Impulsiveness in at least two areas that are potentially self-damaging, such as excessive alcohol indulgence at different times and impulsively moving from place to place.

3. Inappropriate intense anger or lack of controlled anger.

4. A marked and persistent identity disturbance manifested by uncertainty in long-term goals or career choices, types of friends desired, and preferred values, and some uncertainty in self and a not clearly defined self-image.

5. Frantic efforts to avoid real or imagined abandonment.

The appellant's inability to develop and maintain a stable home environment, impulsively moving from residence to residence, as well as moving from job to job and from relationship to relationship, demonstrates her borderline personality disorder. The appellant has also demonstrated other characteristics of borderline personality disorder by her angry

outbursts to her caseworkers and her projection of blame onto others for her problems.

The evidence is clear and convincing that the appellant's mental disorder will continue for a prolonged indeterminate period of time. Dr. Bigelow testified that "[p]rognosis for treatment is at best guarded" and that there is a fairly strong likelihood that the appellant's personality disorder will continue. Dr. Matteson testified that

[b]orderline personality disorder would be a disorder of an individual's interpersonal function which contains a number of longstanding maladaptive traits. They tend to be very fixed traits and not amenable to psychotherapeutic interventions. . . .

. . . .

. . . Sometimes psycho-therapeutic intervention can help people to ameliorate some of the more difficult symptoms but . . . it most likely will remain with an individual.

Dr. Bigelow testified that a personality disorder can significantly impair a person's ability to function in a social or occupational setting, as well as the person's ability to function day to day. In his opinion, the appellant "is well-meaning but also reluctant to take ownership of any parenting negligence of the past as well as being prone to project her problems off onto the system." According to Dr. Bigelow, the appellant "has yet to display the termpermanent [sic] or stability which would allow her to provide a predictable and nurturing environment for children."

Dr. Matteson testified that borderline personality disorder adversely affects an individual's mental and interpersonal functioning in such a way as to make it very difficult for the individual to maintain appropriate relationships and that it can affect parenting skills and capacities as well. Dr. Matteson further testified that the appellant's borderline personality disorder would have a detrimental effect on the child if she were consistently exposed to the appellant.

Where a parent is unable to discharge parental responsibilities because of a mental illness or disorder, such as borderline personality disorder, and where there are reasonable

grounds to believe that such condition will continue for a prolonged and indeterminate period, parental rights may be terminated if such action is found to be in the best interests of the child. See, *In re Interest of V.M.*, 235 Neb. 724, 457 N.W.2d 288 (1990); *In re Interest of Fant*, 214 Neb. 692, 335 N.W.2d 314 (1983).

In this case, the evidence is clear and convincing that the appellant's borderline personality disorder prevents her from performing her parental responsibilities and that the appellant's condition will continue for a prolonged indeterminate period.

The appellant claims the trial court erred in the admission of psychological evidence regarding her borderline personality disorder; however, she does not direct us specifically to what evidence she is referring to in the record. In fact, at no place in the record did the appellant object to any testimony or evidence regarding her personality disorder. A party claiming the improper admission of evidence must object to the admission of such evidence at the time of trial. See *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988).

In terminating the appellant's parental rights, the trial court found that the appellant had substantially and continuously or repeatedly neglected the child and had refused and failed to give her necessary parental care and protection. The appellant assigns this finding as error, but this assignment is not argued in her brief. Errors which are assigned but not argued will not be considered by this court. *State ex rel. Spire v. Strawberries, Inc., ante* p. 1, 473 N.W.2d 428 (1991).

The appellant argues in her brief that the plan of rehabilitation was not reasonable; however, she did not assign this as error, and there is nothing in the record indicating that the appellant ever objected to the plan. Errors which are argued on appeal but not assigned will also not be considered by this court. *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987).

The appellant contends that the trial court erred in finding that she had failed to correct the conditions which led to the court's determination that the child was a child as defined by § 43-247(3)(a).

A parent's failure to make reasonable efforts to comply

with a court-ordered plan of rehabilitation designed to reunite the parent with the child is an independent reason to justify termination of parental rights, and when a parent is unable or unwilling to rehabilitate herself within a reasonable period of time, the best interests of the child require termination of parental rights.

*In re Interest of V.M., supra* at 727, 457 N.W.2d at 291.

The appellant's nomadic lifestyle had been a concern since the inception of the case. The March 8, 1989, rehabilitation plan ordered the appellant to provide appropriate housing and support for the child.

The record shows that the appellant lived in approximately 10 residences between January 1989 and November 1990. The appellant admitted to a caseworker that there were times when she had no permanent residence.

The appellant had difficulty maintaining employment, not because of a lack of skills, but because of her inability to get along with her employers and coworkers. Because of this, she was unable to demonstrate appropriate support for the child and constantly had to continue to rely on others, including DSS, for her own financial support.

The appellant also failed to participate 100 percent in the therapeutic services designated by DSS. While the appellant initially actively participated in the services offered at Richard Young Hospital during the child's hospitalization, her participation diminished toward the end of the hospitalization. The appellant missed the last four or five family nights, had sporadic attendance at family therapy sessions, and failed to actively participate in family therapy sessions that she attended. The appellant would give different excuses for missing a single session and would be seen about town when she was supposed to be attending therapy.

The appellant did avoid the filing of additional criminal charges against her and did complete a parenting class. However, her significant other, Anastos, did not complete the parenting class nor participate 100 percent in the therapeutic services designated by DSS. The appellant also attended most of her counseling sessions with a Ruth Olsen, but these efforts resulted in no significant progress, and the appellant made no

improvement in dealing with her relationship with the child.

"The fact of participation in certain elements of the court-ordered plan of reunification does not necessarily prevent the court from entering an order of termination where the parent has not made satisfactory progress toward reunification." *In re Interest of A.M.Y., F.E.Y., and K.C.Y.,* 237 Neb. 414, 420-21, 466 N.W.2d 93, 97 (1991). The evidence is clear and convincing that the appellant did not make satisfactory progress toward reunification and that the appellant failed to comply with the court-ordered rehabilitative plan which was designed to correct the conditions which led to the court's jurisdiction over the child.

Furthermore, the evidence is clear and convincing that the child's best interests require that the appellant's parental rights be terminated. Although the child loves the appellant, she recognizes that it is not good for her to live with the appellant. The child has bonded with her foster family and wants to be adopted by them. Her foster family is willing to adopt her and provide the permanence and stability that she needs and which the appellant is unable to provide.

The judgment is affirmed.

AFFIRMED.