IN RE INTEREST OF B.B., K.M., J.M., AND A.M., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. S.M., APPELLANT.

479 N.W.2d 787

Filed February 7, 1992.    Nos. 91-137, 91-138, 91-139, 91-140.

Kevin V. Schlender for appellant.

Charles W. Campbell, York County Attorney, for appellee.

George E. Brugh, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

These four cases are appeals from the January 24, 1991, orders terminating the parental rights of the appellant and her

husband to the following children: B.B., born January 16, 1982; K.M., born September 8, 1983; J.M., born January 27, 1985; and A.M., born June 27, 1986. The cases have been consolidated for briefing and argument in this court.

Although the mother of the children, her husband, and the intervenor, B.T., filed separate notices of appeal, only the mother, the county attorney, and the guardian ad litem filed briefs in this court.

B.B., K.M., and A.M. came to the attention of the Nebraska Department of Social Services (DSS) in November 1987, when the appellant took them into the York DSS office, alleging abuse of the children by her husband. In February 1988, those three children were adjudicated to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) because they were in a situation dangerous to life or limb. J.M. was brought to the court's attention when the appellant was evicted from her residence. On March 31, 1988, J.M. was adjudicated to be within the meaning of § 43-247(3)(a) in that he was homeless or destitute.

The children remained in the physical possession of the appellant and her husband until September 1989, when they were placed in foster homes because of concerns about the parents moving and the disruption it would cause the children. All four children have been in the same foster home since March 12, 1990, and have done very well with that family. The foster parents have expressed their desire to adopt all of the children.

The court entered orders, from time to time, directing the parents to participate in counseling designed to stabilize their marriage and teach them appropriate parenting skills and to eliminate the physical and sexual abuse to which the children had been exposed. The court also ordered the parents to provide adequate food, shelter, clothing, and medical care for the children; to give the children adequate supervision in the home; to maintain the home in a clean and safe condition; to not allow B.T. to remain in their home, stay in their home at any time, have access to their home, or have access to any of their children; and to cooperate with DSS personnel.

Supplemental petitions to terminate the parental rights of the

appellant and her husband were filed on September 24, 1990.

Hearings on the supplemental petitions to terminate parental rights were held on January 3 and 4, 1991. On January 24, 1991, the court terminated the parental rights of the appellant and her husband to all four children.

The mother assigned as error the court's findings that the State established by clear and convincing evidence that the appellant substantially, continuously, and repeatedly neglected the minors and refused to give them necessary parental care and protection; that the appellant failed, after reasonable efforts under the direction of the court, to correct conditions leading to the determination made by the court that the minors were children as defined by § 43-247(3)(a); and that it was in the best interests of the minors to terminate the appellant's parental rights to them.

We review the records in these cases de novo and are required to reach a conclusion independent of the trial court's findings; however, where the evidence is conflicting, we consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of B.M., ante* p. 292, 475 N.W.2d 909 (1991).

Throughout their involvement with DSS, the parents' continued marital status has been in question. Attempts to improve the marital situation were met with resistance by the parents, who exhibited a general lack of compliance with recommendations given to them by the therapists who saw them. The parents were inconsistent in making and keeping appointments with their various counselors.

The appellant expressed fear of her husband on numerous occasions. However, when she was offered protection, she elected to remain with her husband.

Assistance from family support workers and a caseworker was met with resistance. On several occasions the family home was found to be unclean and unsafe for the children. Medical attention was not sought for the children except in extreme emergencies. In extremely cold weather, the children were sent to school in inappropriate clothing.

After the children were placed in foster care, the parents lived in an efficiency apartment which was too small for the family.

The parents later located a trailer, which on an unannounced visit was found to be very unclean.

The children's behavior is consistent with that of children who have been physically and sexually abused. They reported to their counselors that they had been beaten by their parents.

B.B. was forced to watch his parents engage in sexual relations, and he told a counselor that he had seen his parents watch pornographic movies. J.M. also reported that he had seen his parents having sex. The appellant admitted that she and her husband had had sex in front of the children.

K.M. reported that she had been sexually molested. The appellant and her husband were not supportive of K.M.'s participation in therapy while she was in their possession. Therapy with one counselor for K.M.'s sexual abuse was discontinued by the parents.

At times, K.M. accused her father of the abuse, and at other times she accused B.T. Apparently, depending on whether the appellant was living with B.T. or her husband, at some times K.M. was told to say that the abuser was B.T., and at other times she was told to say that she had been abused by her father.

Both the appellant and B.T. claim that B.T. is the biological father of J.M. and A.M. Although the appellant was ordered to disassociate herself from B.T., she continued her relationship with him during the times when she was separated from her husband and also while she was living with her husband.

A mental health therapist testified to having concerns regarding the appellant's inability to protect her children from abuse. It was also the opinion of several counselors that the appellant was incapable of parenting her children. At one time, the appellant admitted to a psychologist that she was not capable of parenting her children.

All of the children expressed a desire not to visit with their parents. They would get sick during and after visits with their parents.

The appellant contends the trial court erred in finding she had substantially, continuously, and repeatedly neglected the minors and refused to give them necessary parental care and protection, because she had participated in counseling, attended parenting classes, and tried to implement the

techniques she learned. She claims the primary problem in the case was the abuse that the children were subjected to by their father and his refusal to change his parenting style.

The evidence shows that the appellant failed to protect her children from her husband and B.T., both of whom she had reported as having physically and/or sexually abused her children. Although the appellant repeatedly claimed that her husband was responsible for abusing her children, she continued to reside with him at various intervals, so as to subject herself and her children to that abusive environment. Likewise, she claimed at various times that B.T. was abusive, and yet even though she was ordered by the court to have no contact with him, she continued to reside with him whenever she was separated from her husband. At the time of the termination hearing, the appellant testified that she wanted the court to allow her children to bond with her, her husband, and B.T.

A psychologist who had treated the appellant noted that she lacked insight as to the trauma the children had suffered as a result of the abuse and that she lacked the motivation to protect them from further abuse. Because of her lack of insight and ambivalence regarding her husband's behavior, the appellant was unable to place the needs of her children above her own wants and needs. The appellant's indecisiveness regarding her relationships with her husband and B.T. seriously jeopardized the health and well-being of her children.

Because of the appellant's lack of insight and her lack of motivation to place the interests of her children ahead of her own, the court did not err in finding there was clear and convincing evidence to establish that the appellant had substantially, continuously, and repeatedly neglected her children and had refused to give them the necessary parental care and protection.

The appellant argues that the trial court was incorrect in finding she had failed to comply with court orders designed to correct the conditions which had led to the initial adjudication of the children, because she had attempted to comply with the court orders and DSS had failed to follow through with the recommendations of the psychologists. The record does not

support this contention.

B.B., K.M., and A.M. were adjudicated based upon the abuse that they had suffered from their father and the mother's failure to protect them from this abuse. J.M. was adjudicated when he was found to be in a situation in which the appellant lacked the ability to provide for his fundamental needs of shelter, food, and medical care.

To correct this situation, the court made various orders directing the parents to participate in counseling designed to stabilize their marriage, teach them appropriate parenting techniques, and eliminate the abuse that was a constant in their lives. The parents were also ordered to preclude contact with B.T.; to maintain safe, clean, and adequate housing; and to cooperate with DSS.

Intensive counseling and a variety of services were provided to the appellant to implement the court's plan for rehabilitation. Because of the appellant's various moves from community to community, the services being provided to the family were interrupted, which prevented the children from receiving necessary therapy, including any family therapy recommended by the various professionals.

During the entire course of the court's involvement with the case, the appellant lived with either her husband or B.T. At different times she accused both her husband and B.T. of abusing her children. The appellant has shown by her actions and her testimony that she lacks the insight and motivation to make the necessary changes to put the needs of her children ahead of her own.

" 'A parent's failure to make reasonable efforts to comply with a court-ordered plan of rehabilitation designed to reunite the parent with the child is an independent reason to justify termination of parental rights . . . .' " *In re Interest of B.M., ante* p. 292, 298-99, 475 N.W.2d 909, 913 (1991).

While the appellant may have complied with some parts of the court-ordered plans for rehabilitation, she failed to correct the conditions which led to the initial adjudication of the children. " 'The fact of participation in certain elements of the court-ordered plan of reunification does not necessarily prevent the court from entering an order of termination where

the parent has not made satisfactory progress toward reunification.' " *In re Interest of B.M., supra* at 300, 475 N.W.2d at 914, quoting *In re Interest of A.M.Y., F.E.Y., and K.C.Y.*, 237 Neb. 414, 466 N.W.2d 93 (1991).

Finally, the appellant argues that the court erred by finding there was clear and convincing evidence to establish that it was in the best interests of the children to terminate her parental rights.

Testimony from the DSS family support worker who supervised visits between the appellant and the children, from a therapist, and from one of the foster parents showed that the children feared their parents and wanted to have no further contact or visitation with them. The children have done well in the care of the foster family that is willing to adopt them.

The appellant has never demonstrated an ability to provide an environment for the children free from abuse. She has been unable to make the necessary changes which would enable her to adequately parent her children in a loving and safe home.

" '[W]hen a parent is unable or unwilling to rehabilitate herself within a reasonable period of time, the best interests of the child require termination of parental rights.' " *In re Interest of B.M., supra* at 299, 475 N.W.2d at 913.

The judgment in each of the cases is affirmed.

AFFIRMED.