IN RE INTEREST OF L.P. AND R.P., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. D.P., APPELLANT.
480 N.W.2d 421

Filed February 28, 1992.   No. S-91-253.

Lisa C. Lewis for appellant.

No appearance for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Following an adjudication by the juvenile court that the minor children herein were in a situation dangerous to life or limb or injurious to their health or morals, as provided by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988), and a series of hearings, the court terminated its jurisdiction over the children. The mother has appealed.

In juvenile cases, this court's

"review is de novo on the record, and we are required to reach a conclusion independent of the trial court's

findings; however, where the evidence is in conflict, we will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another."

*In re Interest of B.M.*, 239 Neb. 292, 475 N.W.2d 909, 910 (1991).

L.P., born June 17, 1986, and R.P., born June 14, 1983, are the biological children of D.P. and J.P. The parents were divorced in 1988, and the father then remarried. According to the mother's motion for review of placement, the district court awarded joint custody of the children to the father and mother.

On December 4, 1989, a juvenile petition was filed by the county attorney alleging the status of the children as previously stated, and further alleging that the Nebraska Department of Social Services had custody of the children. An order entered by the juvenile court on December 7, 1989, found further detention a necessity and continued the matter for a pretrial hearing, but retained temporary custody of the children in the Department of Social Services. Further hearings were held on December 20, 1989, and February 7, March 7, June 6, June 20, August 21, and October 15, 1990, in which the court ordered a chemical dependency evaluation of the father, family dynamics evaluations, a continuance of the children's custody with the Department of Social Services, anger control programs for the father, marriage counseling for the father and stepmother, therapy programs, codependency programs, attendance at Alcoholics Anonymous meetings by the mother, and a temporary restraint of visitation rights by the father. At the March 7, 1990, adjudication hearing the children were found to be children within § 43-247(3)(a).

Finally, following a hearing on February 11, 1991, an order was entered by the court restating the earlier adjudication of the children as being within § 43-247(3)(a), but concluding that it was in the best interests of the children that jurisdiction of the juvenile court be terminated. It is this order from which the mother appeals.

According to a "Family Dynamics Evaluation" done by a psychologist on January 24, 1990, and found in the "Confidential Social File," which the parties agreed the court

should consider and which is found in the record in this case, the father was accused of sexually molesting the younger of his two daughters. The father had also been physically abusive to both his former wife, the mother, and his present wife, the stepmother. As found in that evaluation, after being accused of sexual abuse, the father moved out of the house and the stepmother cared for the two girls and the young son of the father and stepmother. This would suggest that the district court had granted possession of the girls to the father and stepmother. The two girls were then placed with the maternal grandparents from November 30, 1989, to February 7, 1990, with the father from February 7 to an undisclosed date, and then with the mother from early July 1990, all according to statements made by the presiding judge and apparently concurred in by the parties.

On March 7, 1990, the mother stipulated to the allegations of the petition. Although the father and his counsel were present, nothing was offered by them. As stated by the trial judge at that time, "[I]t's pretty clear this has been pretty much a breakdown of post-divorce relationships between parents." At the August 21, 1990, hearing, the record discloses for the first time testimony by the mother that in November 1989 she suspected the father had sexually molested the younger daughter. This conclusion was based on strange activity on the part of this daughter, which included her saying "she was going out on a date, and she had five guys" and that "she was going to bed with them"—this from a girl a little over 3 years of age. The mother also told of an incident when a neighbor and her young son came to visit. The older daughter, according to the mother, alerted her and the mother of the boy; they went upstairs; and the boy and the younger daughter, without any of her clothes on, were found together. Upon further questioning, the daughter stated that her father had touched her in the vicinity of her sexual organs.

Gloria Gehrt, a therapist in private practice, had taken over treatment of the younger daughter, as suggested by the Department of Social Services. Gehrt was aware of the allegation of sexual abuse. Most of this information was furnished by the mother. Gehrt was informed of the incident of

the young girl's being naked in the bathroom with the young boy. There was information pointing to the fact that the younger daughter had been sleeping with the father and stepmother and was sleeping with her father before the stepmother joined the family.

Gehrt had a session with anatomical dolls with the younger child. On April 25, 1990, the child told Gehrt, "Daddy touches me here," and pointed to her vagina and to her anal area. Although Gehrt reached no conclusion with regard to whether the touching by the father involved sexual arousal, she concluded that such activity was inappropriate. She concluded that her findings were consistent with a child victim of sexual abuse.

The final hearing was held on February 11, 1991. At this hearing, the report from Stephen Skulsky, a psychologist, was received as part of the confidential social file. Dr. Skulsky concluded, apparently on the basis of no physical evidence of forceful sexual abuse and a denial by the father of such action, that sexual abuse did not occur.

The reports from the Department of Social Services and the child's therapist indicated that much progress had been made in her adaptability to normalcy. However, the trial judge found that the two children were not in danger and that he was "not getting in the middle of a custody dispute; that's not my job, it's another court's job." The trial judge went on to say, "In terms of battles over visitation or custody, or whatever, it's not my job. That's the job of district court handling the dissolution of marriage, and that's where it belongs. If you're going to continue playing those games, I'm not going to participate in it." The trial judge went on to say, "I think there's a likelihood this child was abused, but I'm not making, and I don't have to make, a formal declaration, judiciously, whether I believe the child was abused or who did it."

The record does not disclose where, by reason of the termination of jurisdiction by the juvenile court, custody of these two children will be. The record does not support the conclusion by the juvenile court that the two children are no longer in danger of abuse under the present circumstances of custody. We do not know from the record who will have custody or control over these children. The trial court cannot wash its

hands of the responsibility which it assumed in accepting jurisdiction in the first instance.

We have previously outlined procedures to ensure an adequate record which, if followed in this case, would have obviated the need to remand the cause and, possibly, the need to appeal in the first place:

> [A]fter an adjudication under § 43-247(3)(a) of the Nebraska Juvenile Code and before entering an order containing a rehabilitative plan for a parent, a juvenile court shall inform the juvenile's parent that the court may order a rehabilitative plan and thereafter shall hold an evidential hearing to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. . . . The record of proceedings before a juvenile court shall contain the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan. The juvenile court's specific findings of fact supporting the provisions contained in the parental rehabilitative plan shall be stated in the record.

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 272-73, 417 N.W.2d 147, 161 (1987). "Without an adequate record reflecting the parental shortcomings or the parental conduct to be corrected, eliminated, or ameliorated through a rehabilitative plan, it is virtually impossible for this court to evaluate the efficacy of a rehabilitative plan . . . ." *Id.* at 272, 417 N.W.2d at 161. The separate juvenile court of Sarpy County failed to find facts which would have supported the rehabilitative steps ordered, and compounded this error by failing to find facts indicating that those rehabilitative steps had been completed. It is thus impossible for us to evaluate whether the rehabilitative plan had its desired effect of alleviating the danger to these children that predicated the juvenile court's jurisdiction.

The judgment of the juvenile court relinquishing jurisdiction is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.