IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF ANTHONY H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ANTHONY H., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

NATHAN H., APPELLANT.

Filed September 6, 2022.    No. A-22-001.

Appeal from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellant.

Travis R. Rodak, Deputy Scotts Bluff County Attorney, for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Nathan H. appeals from an order of Scotts Bluff County Court sitting as a juvenile court, terminating his parental rights to his son, Anthony H. Upon our de novo review of the record, we affirm the juvenile court's order.

STATEMENT OF FACTS

*Procedural Background.*

Nathan is the biological father of Anthony, born in March of 2020. Nathan is also the father of another child, born in October 2021, who is not at issue in this case. Both children share a biological mother, Rosa G.C. As discussed further below, Rosa's parental rights to Anthony

- 1 -

remain intact, and we discuss her only as necessary to the resolution of the current appeal by Nathan.

Anthony was removed from the home on June 9, 2021, due to concerns of domestic violence. The same day, a petition was filed with the Scotts Bluff County Court, sitting as a juvenile court, to adjudicate Anthony pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based on Nathan and Rosa becoming involved in physical domestic violence, placing Anthony at risk of harm. The petition also alleged that another child welfare case addressing the same issues had recently closed, and that the family had not "made sustained changes." Anthony was adjudicated in July 2021 and has remained out of the home since his removal.

At a pretrial conference on July 7, 2021, Rosa pled no contest to the petition, the court found a factual basis for the allegations, and adjudicated Anthony under § 43-247(3)(a). Nathan entered a denial to the petition's allegations. The State noted that a prior child welfare case had been closed in May, and due to the short period between the two cases, stated that "if we have a contested adjudication, I am going to file for termination." Nathan's counsel then asked the juvenile court to continue Nathan's pretrial conference to August so that he may consult with Nathan and the court agreed. The court ordered the Nebraska Department of Health and Human Services (the Department) to prepare a case plan for both Rosa and Nathan.

On July 30, 2021, the State filed a motion for termination of Nathan's and Rosa's parental rights to Anthony, alleging statutory grounds to terminate existed pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016), and alleging that termination was in Anthony's best interests.

The juvenile court entered an order of disposition on August 17, 2021, adopting the case plan presented by the Department. Nathan's case plan goals included providing a safe, suitable, and stable living environment; no law enforcement reports of domestic disturbances; and no injuries to Anthony caused by fighting in the home. The court also adopted a concurrent plan of reunification with adoption.

*Termination Trial.*

The contested adjudication and termination trial was held on November 16, 2021. Numerous witnesses testified and several exhibits were received into evidence. A summary of the evidence relevant to Nathan follows.

Officer Tyler Fliam testified that he was dispatched to a domestic disturbance involving Nathan and Rosa on September 24, 2020. Fliam made contact with Nathan and noticed various injuries on him, including scratches on his neck, blood coming from his nose, and a bite wound on his thigh. Nathan informed Fliam that Rosa had caused his injuries. Fliam testified that Anthony, then 6 months old, was in the home while this assault took place. Rosa was cited with domestic assault.

Kortni Zeiler was the Department supervisor for both the initial assessment worker and the ongoing caseworker in Nathan's and Rosa's prior child welfare case. Zeiler testified that the family's prior intake was made on October 5, 2020, due to concerns of domestic violence in the home. Anthony was not removed from the home, and the Department created a safety plan and set up intensive family preservation for Nathan and Rosa.

Zeiler testified that the Department's greatest concern throughout the prior case was the family's history of domestic violence. The October 5 intake reported that there had been four

previous incidents where law enforcement had been called to the home to respond to domestic violence. The intake alleged that Rosa had been holding Anthony during the latest altercation, the same incident that Fliam had responded to. The records check included in the Department's August 6, 2021, case plan reflects that Rosa was also charged with domestic assault in 2018 and 2019.

On November 3, 2020, Nathan tested positive for cocaine. Zeiler testified that the Department added drug testing requirements to Nathan's prior case plan, and that Nathan did not again test positive for any drug during the remainder of the prior case. The records check included in the Department's August 6, 2021, case plan reflects that from September 2018 to August 2020 Nathan was found guilty of 10 drug related charges, including possession of a controlled substance and possession of drug paraphernalia.

Neither Nathan nor Rosa graduated from the intensive family preservation program, instead deciding in December 2020 to end their romantic relationship. Zeiler noted that Nathan and Rosa had gone to mediation to create a parenting plan. At the end of the family's prior case, Nathan and Rosa were co-parenting well together and the case was closed on May 14, 2021.

Zeiler testified that upon the closure of the prior case, the Department's "biggest fear" was that Nathan and Rosa would engage in domestic violence should they resume their romantic relationship, as intensive family preservation had been unsuccessful.

On June 7, 2021, Sergeant Philip Eckerberg responded to a domestic disturbance between Nathan and Rose. When Eckerberg arrived at the scene, one of Rosa's sons, whom she does not share with Nathan, was crying and indicated to Eckerberg that Nathan had hit him in the head. Eckerberg observed a "noticeable" bump on the left side of the boy's forehead. Nathan could not recall whether he had hit the boy during his confrontation with Rosa. Eckerberg later arrested Nathan for child abuse. Pleadings entered into evidence show that, at the time of trial, Nathan had pending charges in Scottsbluff County Court for child abuse and domestic assault.

Eckerberg also noticed several bite marks on Nathan, including on his back, forearm, and the heel of his foot. Nathan reported that Rosa had made those bite marks during the disturbance, and Rosa was later arrested for domestic assault.

Owen Courtney was the Department caseworker assigned to Nathan's case on July 13, 2021. Courtney testified that his main concern regarding the case was the incident on June 7 precipitating the intake, as it involved domestic violence between Nathan and Rose which resulted in Rosa's son being injured. Courtney found this concerning because a child had been injured and because the family's previous child welfare case had also been focused on addressing domestic violence.

Courtney stated that he asked Nathan to participate in an updated substance use evaluation and recommended that Nathan enroll in anger management classes and therapy, so that Nathan would be able to appreciate the impact domestic violence has on Anthony. Courtney also recommended that Nathan take a co-parenting class. At the time of trial, Nathan had not pursued any of Courtney's recommendations. Courtney described Nathan's follow through as "minimal," but did note that Nathan consistently attended parenting time and appeared to have a good relationship with Anthony. The Department's August 6, 2021, case plan also stated that Nathan does well during his parenting time and is "very attentive" to Anthony's needs.

Because of past incidences of domestic violence, Courtney was concerned that Nathan's and Rosa's cycle of violence would continue, placing Anthony at risk of harm. Additionally,

because Nathan had not demonstrated sustainable changes, which would enable him to enter into safe and healthy relationships, Courtney believed Nathan's pattern of violence would continue regardless of his partner. Therefore, the Department was in favor of terminating Nathan's parental rights.

Courtney also provided testimony regarding Nathan's housing and employment. Nathan lived in his father's home, along with his sister. Courtney was unsure of the size of the residence, but estimated the home had three or four bedrooms with enough room to accommodate Anthony. Courtney described Nathan as "currently employed," as Nathan was in the process of buying a lawn mowing business from a friend. When Courtney last spoke with Nathan on October 27, 2021, Nathan was applying for a business loan to purchase mowing equipment.

Trooper Josh Dillinger testified that he pulled Nathan over for speeding on July 25, 2021. Rosa and another individual were passengers in Nathan's car. Dillinger later conducted a probable cause search for drugs and found marijuana products, ecstasy, and psilocybin mushrooms inside the car.

State Patrol dispatch also informed Dillinger that Rosa had a domestic violence protection order against Nathan, and so Dillinger arrested Nathan for violating the order. Dillinger could not recall any statements made regarding why Nathan and Rosa were together. Rosa's protection order is not included in our record, but pleadings entered into evidence reference both harassment and domestic abuse protection orders entered on June 8, 2021. On July 26, Nathan was charged in Banner County Court with violation of a harassment protection order, possession of 1 ounce or less of marijuana, and possession of drug paraphernalia. The violation of a harassment protection order charge was amended to attempt of a Class II misdemeanor, and Nathan pled no contest to the three charges on September 13. Nathan was sentenced to 2 days in jail for the attempt of a Class II misdemeanor charge and fined a total of $900. At the time of trial, Nathan also had two pending charges in Scott Bluff County Court for violation of Rosa's domestic abuse protection order.

Nathan testified in his own behalf. Nathan noted that while he had not yet followed the recommendations of the Department, he had a substance use and mental health evaluation scheduled for the week following the termination trial. Nathan clarified that he has missed two scheduled evaluation appointments since June 7, 2021, because he has trouble remembering to attend them. Further, he had participated in parenting classes and therapy during his previous child welfare case. Nathan conceded that he has not taken any courses or attended therapy for the present case. Nathan estimated that he had spoken to Courtney four or five times since the child welfare cases began and had not yet had a team meeting.

Nathan stated that he and Rosa were presently separated and had been since June 7, 2021. Nathan denied any desire to resume a romantic relationship with Rosa.

On cross-examination, Nathan was questioned as to why he was with Rosa on July 25, 2021, if the couple had separated on June 7. Nathan responded that he had recently turned 21 years old, and "went to Colorado to smoke weed." Nathan did not want to make the trip alone, and asked Rosa to accompany him as she was somebody he trusted.

*Order.*

Following the termination trial, the juvenile court entered an order on December 22, 2021, terminating Nathan's rights to Anthony. The court found that the State had met its burden of proving substantial and continuous neglect, pursuant to § 43-292(2). The court further found that Nathan was an unfit parent who had shown "no motivation to change." Thus, it was in Anthony's best interests to have Nathan's parental rights terminated. In the same order, the court found that while there was statutory grounds to terminate Rosa's parental rights, doing so would not be in the best interests of Anthony, as Rosa was making positive progress on her case plan.

Nathan appeals.

ASSIGNMENTS OF ERROR

Nathan assigns, restated, that the juvenile court erred in finding that (1) statutory grounds existed to terminate his parental rights, and (2) termination of his parental rights was in Anthony's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021).

ANALYSIS

*Statutory Grounds for Termination.*

We first address Nathan's claim that the juvenile court erred in terminating his parental rights because the evidence was insufficient to support the statutory grounds for termination. The juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292(2).

Section 43-292(2) provides for termination of parental rights when "[t]he parent has substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Parents may as surely neglect a child of whom they do not have possession by failing to put themselves in a position to acquire possession as by not properly caring for a child of whom they do have possession. *In re Interest of Louis S. et al.*, 17 Neb. App. 867, 774 N.W.2d 416 (2009), *abrogated on other grounds, In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012). A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). Past neglect, along with facts relating to current family circumstances which go to best interests, are all properly considered in a parental rights termination case under § 43-292(2). *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

Anthony was removed from the parental home in June 2021 because of a domestic violence incident between Nathan and Rosa, during which his half brother was injured by Nathan. This incident mirrors the event that led to the family's prior child welfare intake, which, again, involved

a domestic violence incident between Nathan and Rosa while 6-month-old Anthony was in the home. Nathan has done little to address this pattern of domestic violence. He has not participated in anger management classes or parenting classes or engaged in therapy. This case was opened just 23 days after the prior child welfare case was closed and involves nearly identical domestic violence issues. We agree with the juvenile court's assessment that Nathan has shown little motivation to change.

Additionally, Nathan has not only failed to address his role in the unhealthy relationship with Rosa, but he has continued the dynamic by seeking Rosa out. While Nathan testified that he and Rosa separated on June 7, 2021, the day of the domestic violence incident which led to this case, July 25, he was traveling in a car with Rosa. This is all the more concerning given that Rosa had acquired a domestic violence protection order against Nathan on June 8. Nathan has chosen to spend time with Rosa, despite clear evidence that their dynamic places both himself and Anthony at risk of harm. We also note that there was evidence adduced suggesting that Nathan is continuing to use illegal drugs, which was a concern in the prior child welfare case. A parent's lack of insight and lack of motivation to place the interests of his or her children ahead of the parent's interests clearly and convincingly establishes that the parent substantially, continuously, and repeatedly neglected his or her children and refused to give them the necessary parental care and protection. See *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992).

The record shows clear and convincing evidence of neglect under § 43-292(2).

*Best Interests and Unfitness.*

Nathan also assigns that the juvenile court erred in finding that it was in Anthony's best interests to terminate his parental rights. In addition to proving a statutory ground, the State must show that termination of parental rights is in the best interests of the children. § 43-292; *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). Because the parent's right to raise his or her children is constitutionally protected, the court may terminate parental rights only when the State shows that the parent is unfit. *In re Interest of Isabel P. et al., supra*. There is a rebuttable presumption that the best interests of the children are served by having a relationship with their parent. *Id*. This presumption is overcome only when the State has proved that the parent is unfit. *Id*. Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id*. The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id*.

Nathan argues that he is a fit parent because his bond with Anthony is positive and close. Trial testimony evidenced that Nathan was consistent in attending his parenting time and has a warm relationship with Anthony. However, the Nebraska Supreme Court has held that having a bond with a child does not necessarily make the parent a fit person to provide parental care for the child. See *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016).

Throughout the case, there have been safety concerns related to domestic violence between Nathan and Rosa. Yet, Nathan has not complied, even minimally, with the rehabilitative plan. Nathan has missed evaluation appointments and has not engaged in domestic violence counseling or anger management classes. There was no evidence presented at trial which demonstrated that

Nathan has made any meaningful or lasting changes or gained insight into his own faults or shortcomings necessary to safely and consistently provide for Anthony long term.

This lack of insight is all the more concerning considering that this case began mere weeks after the prior child welfare case was closed. Further, the prior case was closed only because Nathan and Rosa ceased their romantic relationship, not because Nathan had successfully completed intensive family preservation. The Department noted that because Nathan had not gained perspective into his domestic violence dynamic with Rosa, Nathan may repeat the same violence pattern regardless of his partner. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

While the testimony from the law enforcement officials who responded to the domestic violence incidents in September 2020 and June 2021 noted that Nathan was the victim of Rosa's physical attacks, Nathan remained responsible for protecting Anthony from domestic violence. Despite it being clear that Anthony could be injured in an altercation between Nathan and Rosa, as was the case with Anthony's half brother, Nathan continued to engage with Rosa and asked her to accompany him on a trip. Nathan's claim that the couple is separated has been undermined by his own actions. The blatant disregard of the protection order and the potential for future violence between Nathan and Rosa raises concerns that Nathan is unaware of the trauma and harm the violence may cause Anthony. Of further concern is Nathan's apparent desire to continue using drugs based upon the presence of drugs and paraphernalia in his vehicle when he was stopped while traveling to Colorado to "smoke weed."

We find there was clear and convincing evidence to show that Nathan was unfit and that terminating his parental rights was in the Anthony's best interests.

CONCLUSION

We conclude the State proved by clear and convincing evidence that grounds for termination of Nathan's parental rights existed under § 43-292(2) and that termination of his parental rights is in the best interests of Anthony. Accordingly, the juvenile court's order is affirmed.

AFFIRMED.