IN RE INTEREST OF J.T.B. AND H.J.T., CHILDREN UNDER 18 YEARS OF AGE.
SAINT JOSEPH CENTER FOR MENTAL HEALTH, APPELLEE, V.
COUNTY OF DOUGLAS, NEBRASKA, A POLITICAL SUBDIVISION, APPELLANT.
514 N.W.2d 635

Filed April 15, 1994.   No. S-92-450.

James S. Jansen, Douglas County Attorney, and Marjorie A. Records for appellant.

Patricia A. Zieg and Mark E. Novotny, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

FAHRNBRUCH, J.

Douglas County appeals an order of the Douglas County Separate Juvenile Court directing Douglas County to pay Saint Joseph Center for Mental Health (St. Joseph) $27,204.75 for services St. Joseph claims it rendered to the mother of two minor children who were under the jurisdiction of the juvenile court.

The juvenile court had previously temporarily ordered that

the mother's two minor children be placed in foster care while they were in the custody of the Department of Social Services (DSS). The court subsequently ordered that the children's mother be transported from a jail to St. Joseph for treatment.

Douglas County moved for (1) a new trial and (2) vacation of the court's order requiring Douglas County to pay St. Joseph's claim for services. The motions were overruled, and Douglas County appealed.

Because the Douglas County Separate Juvenile Court lacked subject matter jurisdiction to order Douglas County to pay St. Joseph's claim for services to the mother, we vacate the juvenile court's payment order and remand the matter to the juvenile court with direction to dismiss St. Joseph's application for payment.

## ASSIGNMENTS OF ERROR

In substance, Douglas County asserts that the juvenile court (1) lacked subject matter jurisdiction to require it to pay St. Joseph's claim for services to the children's mother, (2) lacked personal jurisdiction over the county because it failed to afford the county notice and an opportunity to be heard, and (3) erred in denying the county's motion for new trial.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of L.P. and R.P.*, 240 Neb. 112, 480 N.W.2d 421 (1992).

## FACTS

After an April 9, 1991, adjudication hearing, the juvenile court determined that J.T.B. and H.J.T. were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) and gave temporary custody of the children to DSS for foster care placement. As far as relevant here, § 43-247(3)(a) sets forth that the juvenile court has jurisdiction of

[a]ny juvenile . . . who lacks proper parental care by

reason of the fault or habits of his or her parent, guardian, or custodian; whose parent . . . neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; . . . or who is in a situation . . . dangerous to life or limb or injurious to the health or morals of such juvenile.

In its adjudication order, the juvenile court found that the children's mother, C.B., "uses alcohol to excess which affects her ability to properly parent" her children and that the mother "has failed to follow through with medical care" for her children. At the time of the April 9 hearing, the mother had been incarcerated by a criminal court for 45 days for lewd conduct. She was not scheduled to be released until April 20.

The juvenile court held a disposition hearing May 9, 1991, and on May 10 found that it was in the best interests of the two minor children that they continue in the custody of DSS. The court ordered the children's mother to obtain a chemical dependency evaluation and to enter a treatment program if recommended by the evaluator. The disposition order did not designate where the treatment was to take place or who should pay for it.

On June 1, the mother, who was then 18 years old, was arrested for being a minor in possession of alcohol. She failed to appear for a June 28 court hearing on that charge, and a warrant for her arrest was issued by the court in which the charge was pending.

The mother did appear at a July 9, 1991, juvenile court hearing for a review of her children's case. At that hearing, there was evidence that the mother continued to "drink a lot and has been getting drunk." The juvenile court's probation officer and DSS recommended, inter alia, that the court order the mother to enter a dual-track, inpatient program for psychiatric and chemical dependency treatment. The county attorney representing the State, the guardian ad litem for the children, and the mother's attorney all concurred in this recommendation. After the July 9 hearing, the juvenile court again ordered that the mother's two children remain in the custody of DSS and ordered the mother to enter a dual-track,

inpatient treatment program as recommended. The court did not specify where the treatment was to take place or who should pay for it.

Following the July 9 hearing, pursuant to an arrest warrant, which apparently was issued by another court on her minor-in-possession charge, the mother was arrested and taken to the Douglas County Correctional Center.

On July 12, 1991, the juvenile court on its own motion entered an order finding that the mother (1) was in jail and would not be transferred to the Hastings Regional Center for treatment until August 10 and (2) was in need of aid at St. Joseph. The juvenile court then ordered that the mother be transported to St. Joseph for "any treatment." In addition, the court ordered that any services required by the mother be paid by Douglas County.

Nothing in the record indicates that the mother was in need of emergency treatment at the time she was transferred to St. Joseph, nor does the record reflect what type of treatment, if any, the mother received at St. Joseph from July 12 through August 13, 1991. The record does reflect that after the mother left St. Joseph, DSS continued its efforts to have the mother admitted into the Hastings Regional Center's dual-track treatment program. The mother eventually entered the Hastings Regional Center on March 30, 1992. She stayed only 5 days and left voluntarily against medical advice.

Previously, on January 15, 1992, St. Joseph filed an application in the children's case in juvenile court for an order requiring payment of $27,204.75 for services St. Joseph claimed it had rendered to the mother from July 12 through August 13, 1991. St. Joseph alleged that it had submitted its bill to Douglas County and that payment had been refused. The record is silent as to whether that refusal was appealed to any court.

On March 9, 1992, the juvenile court, on its own motion, entered an "Order to Clarify" its July 12, 1991, order. In the clarification order, the juvenile court declared that the cost of treating the mother at St. Joseph "shall be borne by Douglas County to the extent allowable under the law." St. Joseph then filed a motion to reconsider the order to clarify because the

order was not timely made under Neb. Rev. Stat. § 25-2001 (Reissue 1989), which provides when a court may vacate or modify its own judgments or orders after the term of court. After an April 7, 1992, hearing on St. Joseph's motion, the juvenile court on April 9 filed an order in which the court (1) granted St. Joseph's motion to reconsider the order to clarify dated March 9, 1992; (2) vacated its March 9, 1992, order as being void ab initio in that said order was made out of term of the court; (3) found that St. Joseph had relied upon the court's July 12, 1991, order in subsequently rendering care to the mother; (4) granted St. Joseph's application for payment; and (5) directed Douglas County to pay St. Joseph $27,204.75. The April 9 order was signed and approved as to form and content by an assistant Douglas County Attorney.

On April 17, 1992, the county moved for a new trial and vacation of an order for payment. The motion was overruled on May 7, and Douglas County timely filed a notice of appeal on May 28.

## ANALYSIS

To dispose of this appeal, it is only necessary that we review the juvenile court's April 9 order and its May 7 denial of the county's motion for new trial.

With that in mind, we turn to Douglas County's claim that the juvenile court lacked subject matter jurisdiction because it had no authority to order the county to pay for the mother's treatment at St. Joseph. In the juvenile court, the county raised the issue of that court's subject matter jurisdiction to order payment for services to the mother. The juvenile court's ruling on the issue was unfavorable to the county.

When a lower court lacks the power, that is, the subject matter jurisdiction, to adjudicate the merits of *a claim, issue, or question*, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. See, *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993); *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986). Although an extrajurisdictional act of a lower court cannot vest the appellate court with jurisdiction to review the merits of the appeal, the appellate court has jurisdiction and,

moreover, the duty to determine whether the lower court had the power, that is, the subject matter jurisdiction, to enter the judgment or other final order sought to be reviewed. See, *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993); *In re Interest of L.D. et al., supra*.

Subject matter jurisdiction is a court's power to hear and determine a case of the general class or category to which the proceedings in question belong and to deal with the general subject involved in the action before the court. *Riley, supra; Kane v. Vodicka*, 238 Neb. 436, 471 N.W.2d 136 (1991). This court has stated further that jurisdiction of the subject matter means the authority to hear and determine both the class of actions to which the action before the court belongs and *the particular question which it assumes to determine.* See, *McCollister v. McCollister*, 229 Neb. 769, 428 N.W.2d 908 (1988); *State ex rel. Bauersachs v. Williams*, 215 Neb. 757, 340 N.W.2d 431 (1983).

Here, the particular questions which the juvenile court assumed to determine in its April 9 order were whether the county owed the $27,204.75 claimed by St. Joseph in its application for payment and whether Douglas County should be ordered to pay St. Joseph that amount for services rendered to the mother. We are unable to find any statutory or case-law authority granting a juvenile court subject matter jurisdiction to determine these questions.

In *In re Interest of L.D. et al., supra*, this court stated that subject matter jurisdiction is vested in the juvenile court by an adjudication that a child is a juvenile described in § 43-247. Subsection 5 of § 43-247 extends the juvenile court's jurisdiction to parents, guardians, or custodians who have custody of any juvenile described in the section. The juvenile court thus acquired jurisdiction over the children and their mother in this case when it found at its April 9, 1991, adjudication hearing that the children were within the meaning of § 43-247(3)(a). It should be remembered, however, that the juvenile court's jurisdiction over the mother was as a parent, and not as a juvenile described in § 43-247.

A juvenile court can order a *juvenile* under its jurisdiction to receive medical, psychological, or psychiatric study or

treatment. The juvenile court can order the costs of such study or treatment to be paid by the parent or guardian of the juvenile; by DSS if the juvenile has been committed to DSS' custody; or, if not otherwise provided for by law, by the county in which the petition is filed. See Neb. Rev. Stat. § 43-290 (Cum. Supp. 1992). However, this appeal does not deal with medical, psychological, or psychiatric care rendered to a juvenile under the court's jurisdiction. Rather, it deals with whether the juvenile court has the power to order a county to pay for such type of care rendered to a mother of juveniles under the court's jurisdiction.

We have previously held that a juvenile court has the discretionary power to prescribe a reasonable plan for parental rehabilitation to correct the conditions underlying the adjudication that a child is a juvenile within the Nebraska Juvenile Code. *In re Interest of A.H.*, 237 Neb. 797, 467 N.W.2d 682 (1991); *In re Interest of L.H.*, 227 Neb. 857, 420 N.W.2d 318 (1988). See, also, Neb. Rev. Stat. § 43-288(1) (Reissue 1988). However, we are unable to find any statutory or case-law authority under which a juvenile court can order a county to pay for a mother's rehabilitative treatment, nor has any such authority been cited to us.

Although the juvenile court's April 9 order directing Douglas County to pay St. Joseph $27,204.75 was approved in writing as to form and content by an assistant Douglas County Attorney, such approval cannot create subject matter jurisdiction where none exists. Parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent, nor may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994).

Therefore, we hold that the juvenile court did not have subject matter jurisdiction to order Douglas County to pay St. Joseph for services claimed to have been rendered to the mother of children under the jurisdiction of the juvenile court. Because of this holding, we need not address Douglas County's two other assignments of error.

The Douglas County Separate Juvenile Court's order directing Douglas County to pay St. Joseph's claim for services to the mother of the children in this case is vacated, and the

cause is remanded to the Douglas County Separate Juvenile Court with direction to dismiss St. Joseph's application for payment.

JUDGMENT VACATED, AND CAUSE REMANDED
WITH DIRECTION TO DISMISS.