IN RE INTEREST OF LAURA O. AND JOSHUA O.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. CARL O., APPELLANT.
574 N.W. 2d 776

Filed February 24, 1998.   No. A-97-548.

Phillip G. Wright, of Quinn & Wright, for appellant.

James S. Jansen, Douglas County Attorney, and Timothy K. Dolan for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

MILLER-LERMAN, Chief Judge.

Carl O. appeals an April 21, 1997, dispositional order of the Douglas County Separate Juvenile Court denying him visitation with his two minor children, Laura O. and Joshua O. The court had previously adjudicated the children to be within the court's jurisdiction pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1996) based on, inter alia, an admission by Carl that the children lacked proper parental care because of his use of alcohol and controlled substances. At the disposition hearing of April 14, 1997, the Nebraska Department of Health and Human Services (DHHS) proposed a plan of reunification in which, inter alia, Carl would be allowed supervised visitation with the

children. The court generally adopted the plan, except that it ordered that no visitation occur. From that ruling, Carl appeals. For the reasons recited below, we dismiss the appeal.

## BACKGROUND

Carl is the father of two children, Laura and Joshua, who were 8 and 7 years of age, respectively, at the time of the dispositional order. Although married to the children's mother, Mary Ann O., Carl was separated from her and was living apart from the children and Mary Ann in May 1996 when an amended petition for adjudication was filed in the juvenile court. The amended petition alleged that Laura and Joshua lacked proper parental care by reason of the faults and habits of Carl and Mary Ann, including Carl's and Mary Ann's alcohol and controlled substance abuse. Separate counsel represented Carl and Mary Ann at all phases of the juvenile court proceedings. Claims pertaining to Mary Ann are not at issue in this appeal.

Carl admitted that the children lacked proper parental care as alleged in the amended petition, and he did not contest the court's assumption of jurisdiction over the children. The court ordered the children to be placed in the custody of DHHS (at that time, the Nebraska Department of Social Services), which placed the children together in the care of a foster family. In its temporary order of May 14, 1996, the juvenile court ordered that Carl could have weekly supervised visitation with the children.

During their placement in foster care, both of the children received psychological counseling. Further, Laura underwent corrective surgery on her feet relating to Friedreich's ataxia, a serious type of muscular dystrophy with which Laura is afflicted to such an extent that she must use a motorized cart for ambulation at school.

On January 3, 1997, the guardian ad litem moved the court for an order terminating Carl's visitation with Joshua and Laura. In his motion, the guardian ad litem cited reports by the visitation specialist that during the visits Carl acted disruptively and inappropriately, including whispering to the children that he could take them from foster care at will. The guardian ad litem alleged that the children were apprehensive and fearful as a result of Carl's behavior. The guardian ad litem withdrew his

motion upon Carl's admission that because of his behavior, Joshua and Laura lacked proper parental care, and upon Carl's agreement to abide by the rules of visitation.

In an interim report on the children's status filed with the juvenile court on March 14, 1997, the guardian ad litem stated that "[t]he children have expressed their fear of Carl and they do not especially care for these visitations. However they are torn between their love and duty towards their father and the fear they have of him."

At the disposition hearing of April 14, 1997, DHHS case-worker Josephine Glass testified generally that both Laura and Joshua continually expressed great anxiety regarding the visits and, in some instances, refused to participate in them. According to Glass, both children said they feared their father and requested that at least one and preferably two additional persons (at least one of whom was male) be present during the visits to prevent physical harm from Carl. The evidence also shows that Carl whispered to the children so that the attending visitation supervisor could not hear his comments. According to Glass, Laura and Joshua were agitated by Carl's visits. Their feelings were not soothed by gifts, which Carl left for the children on the doorstep of the foster family's home despite being directed by Glass not to do so.

As noted above, the DHHS case plan for the children presented to the juvenile court provided for supervised visitation by Carl, although not without reservation. In contrast, Carl testified that he did not believe that his children feared him, urging that unsupervised visitation was appropriate and implying that such visitation was in the children's best interests. Further, notwithstanding his prior admissions that Laura and Joshua lacked proper parental care because of his behavior, Carl asserted at the hearing that his past actions, such as pawning the motorized cart upon which Laura depended for ambulation at school due to her muscular dystrophy, were not inappropriate.

In its dispositional order of April 21, 1997, the juvenile court generally adopted the plan proposed by DHHS; however, it ruled that Carl should be precluded from visitation with Laura and Joshua. For the sake of completeness, we note that the juvenile court also stated that Carl could later petition that court for

amendment of the visitation order during or before the scheduled periodic juvenile court review hearing. Carl appeals from the order precluding visitation but otherwise adopting the plan proposed by DHHS.

## ASSIGNMENTS OF ERROR

Carl claims that the juvenile court abused its discretion in denying him visitation with his children and that the juvenile court was without jurisdiction to enter the order.

## STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). It not only is within the power but is the duty of an appellate court to determine on its own motion whether it has jurisdiction over the matter before it. *Trew v. Trew*, 252 Neb. 555, 567 N.W.2d 284 (1997). Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997).

## ANALYSIS

It is axiomatic that the issue of parental visitation rights is included within the Nebraska Juvenile Code and is subject to judicial determination. "The rule that custody and visitation of minor children are to be determined on the basis of their best interests 'clearly envisions an independent inquiry by the court.'" *In re Interest of Teela H.*, 3 Neb. App. 604, 610, 529 N.W.2d 134, 138 (1995). Recognizing the importance of prompt review when there is a dispute regarding a plan of care for children under the court's juvenile jurisdiction, the Nebraska Unicameral in 1989 enacted legislation to create juvenile review panels to hear, on an expedited basis, appeals by DHHS (at that time, the Nebraska Department of Social Services) and other parties who disagree with court orders which deviate from the case plans recommended by DHHS. See Neb. Rev. Stat. §§ 43-287.01 through 43-287.06 (Reissue 1993 & Cum. Supp. 1996).

■ Section 43-287.03 provides:

> A juvenile review panel shall review a disposition of a court when the court makes an order directing the implementation of a plan different from the plan prepared by the Department of Health and Human Services concerning the care, placement, or services to be provided to the juvenile and the department or any other party believes that the court's order is not in the best interests of the juvenile.

It is well established in Nebraska jurisprudence that §§ 43-287.01 through 43-287.06 provide the exclusive means of review for juvenile court dispositional orders within the ambit of the expedited appeal process defined within those statutes. *In re Interest of Jeffrey R.*, 251 Neb. 250, 557 N.W.2d 220 (1996). To determine if a matter falls within the expedited juvenile review panel process, a two-part analysis applies. First, the contested dispositional order must implement a different plan for the juvenile than the plan proposed by DHHS. Second, the appealing party must have a belief that the court-ordered plan is not in the best interests of the juvenile. See *In re Interest of Jeffrey R., supra.*

In the instant case, the substance of Carl's appeal meets the two-part conjunctive requirements under the statutes and cases, and his appeal was, therefore, subject to the expedited review by a review panel. First, the record shows that the juvenile court did, in fact, enter a dispositional order which differed from the case plan recommended by DHHS regarding visitation, which disposition concerns the care, placement, or services to be provided to the juveniles. Second, it is Carl's belief, as expressed in his appeal to this court, that the plan ordered by the juvenile court denying Carl visitation with his children is not in the best interests of the children.

A review of the literature shows that prior Nebraska decisions interpreting the mandatory and exclusive nature of the juvenile review panel process have involved appeals by DHHS or its predecessor, the Nebraska Department of Social Services. See, *In re Interest of Jeffrey R., supra*; *In re Interest of Alex T. et al.*, 248 Neb. 899, 540 N.W.2d 310 (1995); *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993); *In re Interest of William H.*, 3 Neb. App. 869, 533 N.W.2d 670 (1995); *In re Interest of Kelly*

*D.*, 3 Neb. App. 251, 526 N.W.2d 439 (1994); and *In re Interest of A.K.*, 2 Neb. App. 662, 513 N.W.2d 42 (1994).

Our review of the language of §§ 43-287.01 through 43-287.06 shows that the procedures, protections, and remedies provided therein apply to both DHHS and "any other party." The statutes refer to the rights of DHHS and "any other party" equally and uniformly for purposes of an appeal to a juvenile review panel. See, e.g., § 43-287.01 ("[i]t is the intent to allow such review only when . . . the department or any other party believes such court-ordered plan not to be in the best interests of the juvenile"); § 43-287.03 ("[a] juvenile review panel shall review a disposition of a court when the court makes an order . . . and the department or any other party believes that the court's order is not in the best interests of the juvenile"); § 43-287.04 ("[i]f the Department of Health and Human Services or any other party desires to have a disposition described in section 43-287.03 reviewed, the department or other party shall have ten days after disposition by the court to file a request for review by a juvenile review panel"); and § 43-287.06 ("[t]he Department of Health and Human Services or any other party may appeal from any final order or judgment entered by the juvenile review panel").

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997).

The terms of §§ 43-287.01 through 43-287.06 are plain, direct, and unambiguous. These provisions make no relevant distinction between DHHS and "any other party" pertaining to appeals to a juvenile review panel. Given the clarity and directness of these statutory provisions and the general rule that courts will not search for hidden or tenuous meaning in unambiguous statutory language, it logically follows, and we so hold, that parties other than DHHS who appeal from a juvenile court dispositional order which deviates from the case plan recommended by DHHS are subject to the same juvenile review panel procedures and protections as DHHS.

In connection with his claim that the juvenile court adopted a plan that differed from that proposed by DHHS and that such ruling and plan so adopted are not in the best interests of Laura and Joshua, Carl, like DHHS and any other party to the juvenile court proceedings below, must present his appeal to a juvenile review panel as the exclusive forum to review a juvenile court's dispositional order which differs from a case plan recommended by DHHS concerning the care, placement, or services to be provided to a juvenile. We, therefore, conclude that this court has no jurisdiction to consider Carl's appeal of the juvenile court order which deviated from the DHHS plan and denied him visitation with Laura and Joshua.

## CONCLUSION

This court is without jurisdiction to consider Carl's appeal. The proper and exclusive forum for Carl's appeal from the juvenile court dispositional order which deviates from the case plan recommended by DHHS is a juvenile review panel, pursuant to §§ 43-287.01 through 43-287.06. Therefore, this appeal is dismissed.

APPEAL DISMISSED.