IN RE INTEREST OF TANISHA P. ET AL., CHILDREN
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLANT, V. BETTY T., APPELLEE.
611 N.W. 2d 418

Filed June 6, 2000.    No. A-99-959.

Joe Stecher, Dodge County Attorney, and Eric S. Miller for appellant.

Timothy M. Schulz, guardian ad litem for Tanisha P.

Bradley D. Holtorf, guardian ad litem for Timothy M. & Travis M.

IRWIN, Chief Judge, and MOORE, Judge.

MOORE, Judge.

The State appeals from the decision of the Dodge County Court, sitting as a juvenile court, approving the return of a minor child, Tanisha P., to the home of her grandmother and legal guardian, Betty T. The court had previously adjudicated Tanisha and her brothers, Timothy M. and Travis M., to be within the court's jurisdiction pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998) based on, inter alia, the boys' admission to sexual abuse of Tanisha. For the reasons recited below, we affirm the decision of the juvenile court.

## BACKGROUND

On September 11, 1998, the State filed a petition in the juvenile court in which it was alleged that Tanisha, born April 3, 1988; Timothy, born December 26, 1985; and Travis, born December 18, 1984, were juveniles as defined in § 43-247(3)(a). As summarized, the petition alleged that Tanisha had disclosed to a doctor that Timothy and Travis had been having sexual contact with her and that when Betty was informed about Tanisha's disclosure, Betty accused Tanisha of lying. The petition further

alleged that the boys admitted to having and attempting sexual intercourse with Tanisha. The petition stated that Tanisha had been placed in protective custody. Following a hearing on September 23, 1998, the court ordered that Tanisha would remain committed and placed with the Department of Health and Human Services (DHHS), with visitation according to a plan outlined by DHHS. The boys remained in Betty's home.

Following a hearing on February 24, 1999, all three juveniles were adjudicated under § 43-247(3)(a). In its order filed March 26, the court found that the evidence showed that Tanisha had been sexually abused. However, the court noted that the boys had withdrawn their previous admissions to abusing Tanisha and that Betty believed Tanisha had been sexually abused by someone other than the boys or Betty's boyfriend. The court found that reasonable efforts had been made to prevent Tanisha's placement outside of Betty's home, that it would be contrary to Tanisha's welfare to be in Betty's home, and that reasonable efforts were being made to make it possible for Tanisha to have a stable home. The court ordered that DHHS would submit a "Case Plan and Court Report" (case plan) to the court, that temporary custody of the juveniles would remain with DHHS, and that DHHS should give the court 7 days' notice of any change in placement.

On May 19, 1999, a hearing was held, after which the court reiterated much of its earlier orders but, in addition, adopted DHHS' case plan. The court continued Tanisha's placement in a foster home and the boys' placement with Betty. Pursuant to the case plan, the court ordered that all three juveniles receive all necessary mental, physical, and health care services, and that Betty remain involved in all such services as recommended by the involved professionals.

DHHS wrote a letter to the court on August 5, 1999, in which the progress made by the juveniles and Betty was summarized. The letter stated that Tanisha's therapist, Gloria Gehrt, reported that Tanisha had made "a lot of progress" in her therapy; that there had been sessions between Tanisha and Betty and that Betty now recognizes Tanisha's needs; that Betty had a "safety plan" in place that would provide protection for Tanisha at all times; and that Gehrt recommended that Tanisha be returned to

Betty's home before school started. The letter also stated that the boys had addressed issues of sexual abuse in therapy, inappropriate boundaries between them and Tanisha, and the rules to be in place when Tanisha returned to Betty's home. The boys' therapist, Gene Welch, also recommended that Tanisha be returned to the home before the start of school. Both therapists, along with Betty and the three juveniles, participated in two therapeutic family sessions during which Tanisha appeared excited about seeing her brothers again and at the prospect of returning to the home.

In DHHS' letter, DHHS explained its plans to implement semisupervised visits between Tanisha and her brothers and Betty. In addition, Betty's safety plan was described, including her constant supervision of Tanisha and the rules against Tanisha and the boys being in each others' rooms or in the basement together. DHHS recommended that Tanisha be placed with Betty.

The State filed an "Objection to Change in Placement" on August 11, 1999. The objection stated that the change in placement was against Tanisha's best interests. The record indicates that Tanisha was returned to Betty's home on August 12, at a time when the boys were vacationing with their biological father. Apparently, Tanisha was returned to the home before DHHS received notification of the objection to the placement and the related hearing scheduled for the following week. It also appears that Tanisha has since remained in the home.

At the August 18, 1999, hearing, evidence was presented from licensed clinical social workers and a psychologist. Mary Goodwin, a protection and safety worker with DHHS, testified that she had been the family's caseworker since June. Goodwin testified that she had met with Gehrt, Welch, and the family, at which time a plan was developed to return Tanisha to the home. Goodwin stated it was felt that Tanisha's return was appropriate, because Tanisha had made progress in her therapy, the boys had addressed issues that led to an assessment that Tanisha would be safe in the home, and Betty had developed rules for her home for Tanisha's safety. Goodwin acknowledged that the issue of the boys' sexual abuse of Tanisha was not addressed during the family therapeutic sessions and that

the boys had not apologized to Tanisha because they continued to maintain that they did nothing inappropriate. Although Goodwin conceded that the juvenile court had previously found that the boys did something inappropriate, she believed that Tanisha could safely be returned to Betty's home in reliance on Betty's constant supervision of the children. Goodwin noted that a family support worker would visit the home twice weekly. Goodwin voiced confidence in Betty's ability to protect Tanisha, because it was Betty who took the initiative in obtaining therapy for the juveniles when she noticed sexual acting out among them and because Betty had since fully cooperated with DHHS.

Also in evidence was an August 9, 1999, letter from Gehrt to Goodwin. In it, Gehrt stated that Tanisha had made "good progress" in therapy and had some supervised contact with her brothers. Gehrt stated that Betty had apologized to Tanisha for not believing her story. Gehrt found that Betty was very motivated to do what was necessary to have Tanisha return home. Gehrt recommended that Tanisha be allowed to return home and that all family members continue in counseling.

Welch, a clinical social worker, testified that he had worked with the boys regarding boundary issues, sexuality, and appropriate and inappropriate touching. Welch confirmed that neither boy would now admit to inappropriate contact with Tanisha. Welch testified that he did not believe that the boys had sexual contact with Tanisha, at least not to the point of sexual intercourse. Welch noted that Travis is mentally retarded and that Timothy is of slightly below average intelligence. Welch did not believe that either boy was capable of being deceitful. Welch believed that both boys had been frightened into making their earlier admissions to police.

Welch denied that accused sexual perpetrators must first admit to their acts before they could be successfully treated. He further testified that there was no risk in Tanisha's return to the home even without those issues being addressed.

Dr. Terry Davis, a psychiatrist, testified that he had extensive experience in evaluating sexual offenders, including adolescents. Davis looked at the police reports in this case, as well as

statements from the boys and written evaluations made of the boys. However, Davis did not personally evaluate the boys.

Davis testified generally that in the treatment of an accused sexual perpetrator, it is best if that person acknowledges the existence of a problem. Davis questioned how Welch could treat the boys if Welch does not believe that any offenses occurred and the boys refuse to acknowledge a problem.

The juvenile court found that family members had each gone through extensive treatment and training to address issues such as respect and boundaries and appropriate sexuality. The court noted that the caseworker, the guardian ad litem, and Betty's attorney all believe it is safe for Tanisha to return home. The court accepted the recommendation of DHHS that Tanisha return to the home and ordered that a carefully detailed safety plan be crafted to ensure the safety of the juveniles, that there be ongoing therapy and treatment, and that the necessary resources be provided to Betty to ensure the safety of the juveniles. The court further ordered that the safety plan ensure very close monitoring and that the professionals providing services shall provide all necessary resources for the juveniles while recognizing that all three juveniles have been abused and sexualized and require a high level of supervision.

The county attorney has appealed from the juvenile court's order.

## ASSIGNMENT OF ERROR

The county attorney asserts that the juvenile court erred in placing Tanisha back into Betty's home, when the evidence presented at the dispositional hearing held on August 18, 1999, showed that reasonable efforts had not been made to ensure Tanisha's safe return.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999).

## ANALYSIS

*Jurisdiction.*

■ Before reaching the legal issues presented for review, it is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of William G.*, 256 Neb. 788, 592 N.W.2d 499 (1999).

In Tanisha's brief prepared by her guardian ad litem, Tanisha directs us to Neb. Rev. Stat. § 43-285(3) (Reissue 1998), which governs appeals from a change in the placement of a juvenile from what the court originally considered to be a suitable family home or institution to some other custodial situation. Section 43-285(3) states, in part, that "[t]he department or any other party may request a review of the change in placement by a juvenile review panel in the manner set out in section 43-287.04." Tanisha argues that the appeal is untimely because the county attorney failed to first request review by the juvenile review panel. We disagree.

■ Although the language of § 43-285(3) appears to authorize an expedited review in any case, its reach is limited by the requirements set forth in Neb. Rev. Stat. §§ 43-287.01 and 43-287.03 (Reissue 1998). *In re Interest of M.J.B.*, 242 Neb. 671, 496 N.W.2d 495 (1993). It is well established in Nebraska jurisprudence that Neb. Rev. Stat. §§ 43-287.01 through 43-287.06 (Reissue 1998) provide the exclusive means of review for juvenile court dispositional orders within the ambit of the expedited appeal process defined within those statutes. *In re Interest of Laura O. & Joshua O.*, 6 Neb. App. 554, 574 N.W.2d 776 (1998). To determine if a matter falls within the expedited juvenile panel process, a two-part analysis applies. First, the contested dispositional order must implement a different plan for the juvenile from the plan proposed by DHHS. Second, the appealing party must have a belief that the court-ordered plan is not in the best interests of the juvenile. *Id.* In the present case, the court's order changing Tanisha's placement did not differ from the plan proposed by DHHS. Thus, a review by the juvenile review panel was not available to DHHS or the parties.

■ It is also argued that the court's order is not a final, appealable order as to the State because no substantial right of

the State has been affected. We are directed to *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998), in which the Nebraska Supreme Court held that an order denying continued detention of a juvenile prior to adjudication did not affect a substantial right of the State and was therefore not an appealable order. The situation in the present case, however, differs substantially from that in *In re Interest of Anthony G.*, because the preadjudication status of the juvenile in *In re Interest of Anthony G.* resulted in a finding that the State's parens patriae interest did not encompass custody of a juvenile.

In contrast, Tanisha has already been adjudicated as a juvenile as defined in § 43-247(3)(a). The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996). See *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987). The order in the present case, entered subsequent to Tanisha's adjudication and her placement in State-sponsored foster care, affected an existing right of the State.

█ The present appeal by the county attorney was timely filed from a dispositional order of the juvenile court changing Tanisha's placement from foster care to Betty's home. Dispositional orders in juvenile proceedings are final and appealable orders. *In re Interest of Jeremy T.*, 257 Neb. 736, 600 N.W.2d 747 (1999). Thus, we conclude that we have jurisdiction to hear this appeal.

*Change in Placement.*

The county attorney's argument that the juvenile court erred in returning Tanisha to Betty's home can be fairly summarized as follows: (1) The juvenile court had determined that sexual contact had occurred between Tanisha and her brothers; (2) following that determination, the boys' treatment consisted of therapy with Welch, despite Welch's stated belief that the abuse did not occur; (3) no effective treatment of the boys can have taken place when Welch and the boys all deny the abuse; and (4) Tanisha is therefore being sent back into the same home with her abusers even though nothing has been done to resolve the underlying issues that precipitated the court's involvement with this family.

In Tanisha's brief, Tanisha argues that except for Davis, who never met with the family, the witnesses at the hearing were unanimous in their belief that with Betty's vigilance, together with the ongoing therapy and monitoring by DHHS, Tanisha could safely return home and that her return to the home was in her best interests.

After reviewing the record in this case, we are persuaded that the juvenile court did not err in allowing Tanisha to return home. It was Betty who initiated contact with therapists upon observing inappropriate behavior among the juveniles. The therapists and DHHS have consistently been in agreement that Betty has been cooperative with them and has made every effort to ensure Tanisha's safe return to her home. Betty has worked with DHHS to institute a safety plan whereby Tanisha will never be left unsupervised with her brothers. In addition, a caseworker will be visiting the family twice weekly.

We are further persuaded by the unanimity in the opinions of all those who have worked closely with this family. All are in agreement that Tanisha should be returned to Betty's home. The lone dissenting voice at the hearing was that of a psychiatrist who had never met with or examined any of the family members. Based on our de novo review, we cannot say that the juvenile court erred in returning Tanisha to Betty's home.

## CONCLUSION

The juvenile court's order returning Tanisha to Betty's home was a final, appealable order. The court did not err in making that order. Accordingly, the juvenile court's order is affirmed.

AFFIRMED.

SIEVERS, Judge, participating on briefs.